IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL STEWART,   3:11-CV- 01091 RE

       Plaintiff,   **OPINION AND ORDER**

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

REDDEN, Judge:

Plaintiff Michael Stewart ("Stewart") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security Disability ("SSD") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for the calculation and payment of benefits.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1968, Stewart completed high school, and alleges disability since November 10, 1992, due to back, foot, and knee pain. His application was denied initially and upon reconsideration. There have been at least five hearings in this matter. After a September 2010 hearing, an Administrative Law Judge ("ALJ") found him not disabled. Stewart's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Stewart had the medically determinable severe impairments of plantar fasciitis, pain syndrome, and asthma. Tr. 1820.

The ALJ determined that Stewart retained the residual functional capacity to perform a limited range of light work. Tr. 1821.

The ALJ found that Stewart was unable to perform any past relevant work, but retained the ability to perform other work, including charge account clerk, ink printer, type copy examiner, and a bench hand. Tr. 1827-28.

The medical records accurately set out Stewart's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Stewart contends that the ALJ erred by: (1) finding his mental impairments not severe; (2) improperly rejecting a Veterans' Administration disability rating; (3) improperly rejecting

medical opinions; and (4) improperly rejecting lay testimony. The court need not address the last assertion.

## I. Mental Impairments

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

Stewart argues that the ALJ erred by finding his mental impairments of depression and Post Traumatic Stress Disorder ("PTSD") not severe. Stewart points to the counseling notes of John Garwood, Ph.D., in which Dr. Garwood found Stewart did not have the stamina for a four hour work day, the physical mobility or dexterity, the capacity to lift more than 25 pounds, or the

3 - OPINION AND ORDER

ability to sustain attention, concentration, and persistence. Tr. 1026. Dr. Garwood stated that Stewart had a serious employment handicap and vocational rehabilitation was not feasible. Tr. 1027.

In December 2000, Karen Inaba, a psychiatric nurse practitioner, evaluated Stewart after he tested positive on a PTSD screen. Tr. 1172-76. She noted that he appeared anxious, and he reported difficulty with concentration, anhedonia, irritability, and disrupted sleep. Stewart reported intrusive thoughts about the Gulf War and panic attacks. Inaba diagnosed an adjustment disorder with anxiety and depressed mood, and probable PTSD. Tr. 1175.

David Greaves, Ph.D., examined Stewart in April 2001. Tr. 1159-61. Dr. Greaves noted that Stewart had participated in a pain management class with good attendance, but was easily distracted by others. Stewart's pain symptoms and mental health worsened after completing the class. Tr. 1161. Dr. Greaves diagnosed a pain disorder associated with psychological factors and a general medical condition, adjustment disorder versus PTSD, with depressive symptoms, and a GAF of 49.

The ALJ found Stewart had the residual functional capacity:

> [t]o perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand and/or walk for two hours and sit for six hours in an eight-hour workday, can occasionally perform all postural movements, and can withstand no more than occasional exposure to inhaled irritants secondary to asthma.

Tr. 1821. The ALJ found that Stewart was unable to perform any past relevant work, but could perform other work including a charge account clerk, an ink printer, a type copy examiner, and a bench hand. Tr. 1827-28.

The ALJ found that Stewart "has medically documented polysubstance abuse, post-traumatic stress disorder...fibromyalgia, and depressive disorder. These impairments are non-severe because the evidence of record does not establish that they have a significantly limiting effect on the claimant's ability to perform basic work activities." Tr. 1821.

The functional severity of a mental impairment must be assessed based upon functional limitations in the following four categories:

1. activities of daily living;
2. social functioning;
3. concentration, persistence, or pace; and
4. episodes of decompensation.

20 C.F.R. 404 Subpt. P, Appendix 1, Section 12.00C.

The Commissioner agrees that the ALJ was required, pursuant to the Appeals Council Order, to evaluate Stewart's mental impairments using the special psychiatric technique specified in 20 C.F.R. § 404.1520a. The Commissioner argues that the ALJ adequately evaluated Stewart's mental impairments by citing Exhibit B5A, found at Tr.1837-51, which is a previous decision in this case by ALJ Linda R. Haack.

But this case was remanded by the Appeals Council because, among other reasons, ALJ Haack failed to properly evaluate Stewart's mental impairments. Tr. 1863. ALJ Haack found that Stewart's impairments in each of the paragraph B categories were not marked, but she did not decide what level of impairment he did have. Tr. 1844.

Because the ALJ did not rate the degree of functional limitation in the paragraph B criteria, he had no factual basis by which to assess Stewart's mental residual capacity at step four.

///

<mark>II. The VA Rating Decision</mark>

## II. The VA Rating Decision

An ALJ must ordinarily give great weight to a VA determination of disability unless the ALJ identifies "persuasive, specific, and valid reasons" for giving less weight to such a determination. *McCartey v. Masssanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

Stewart was granted 70% service connection disability and individual unemployability by the VA effective June 12, 1995. Tr. 931-59. The ALJ gave the VA rating no weight:

> Social Security evaluators, by regulation, must determine whether an individual is actually incapable of work. Specifically, 20 CFR 404.1466, 416.966, and Social Security Ruling 87-11c direct that Social Security benefits are not awarded solely based on the existence of a physical or mental condition, but are payments dependent on the individual's inability to work. Conversely, the VA unemployability determinations are directorial and involve no actual evaluation of what the claimant could or could not do in a work setting, as is required under the Social Security sequential evaluation process. The undersigned agrees with the reasoning of the prior decisions giving no weight to the claimant's VA ratings. They are unsupported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with substantial evidence in the case record.

Tr. 1824.

Stewart points to the VA decision, which states "we have concluded your multiple service connected disabilities, in [and] of themselves, are of sufficient severity as to have a significant impact on your ability to seek and maintain gainful employment." Tr. 933. Stewart notes that the VA and the ALJ had access to the same medical records, and that the ALJ does not identify any actual inconsistency.

Finally, Stewart argues that the proper remedy is remand for the calculation and payment of benefits, citing *McCartey*. The *McCartey* court found that remand for the payment of benefits

## II. The VA Rating Decision

An ALJ must ordinarily give great weight to a VA determination of disability unless the ALJ identifies "persuasive, specific, and valid reasons" for giving less weight to such a determination. *McCartey v. Masssanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

Stewart was granted 70% service connection disability and individual unemployability by the VA effective June 12, 1995. Tr. 931-59. The ALJ gave the VA rating no weight:

> Social Security evaluators, by regulation, must determine whether an individual is actually incapable of work. Specifically, 20 CFR 404.1466, 416.966, and Social Security Ruling 87-11c direct that Social Security benefits are not awarded solely based on the existence of a physical or mental condition, but are payments dependent on the individual's inability to work. Conversely, the VA unemployability determinations are directorial and involve no actual evaluation of what the claimant could or could not do in a work setting, as is required under the Social Security sequential evaluation process. The undersigned agrees with the reasoning of the prior decisions giving no weight to the claimant's VA ratings. They are unsupported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with substantial evidence in the case record.

Tr. 1824.

Stewart points to the VA decision, which states "we have concluded your multiple service connected disabilities, in [and] of themselves, are of sufficient severity as to have a significant impact on your ability to seek and maintain gainful employment." Tr. 933. Stewart notes that the VA and the ALJ had access to the same medical records, and that the ALJ does not identify any actual inconsistency.

Finally, Stewart argues that the proper remedy is remand for the calculation and payment of benefits, citing *McCartey*. The *McCartey* court found that remand for the payment of benefits

was appropriate when the record was fully developed and great weight was given to McCartey's 80% VA disability rating.

The Commissioner concedes that the ALJ erred in rejecting the VA rating decision on the basis that the VA and Social Security disability inquiries are different. The Commissioner concedes that the ALJ failed to identify the supposedly inconsistent substantial evidence.

The Commissioner argues that the ALJ properly rejected the VA disability decision by stating that he agreed "with the reasoning of the prior decisions giving no weight to the claimant's VA ratings." Tr. 1824. The Commissioner then chooses one of the prior ALJ decisions in this case, in which ALJ Haack rejected the VA disability rating as inconsistent with medical evidence not examined by the VA board, noting Drs. Grewenow, Campbell, Matthew, and Matson. Tr. 1849.

Stewart properly points out that the VA board actually examined the same evidence as both ALJs.

The ALJ failed to articulate persuasive, specific and valid reasons to give no weight to the VA disability and unemployability determinations.

### III. Physician and Other Opinions

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate

7 - OPINION AND ORDER

reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

An ALJ may reject an opinion from an "other source," like a physical therapist, by giving germane reasons for doing so. *Molina v. Astrue,* 674 F.3 1104, 1111 (9th Cir. 2012.

### A. John Garwood, Ph.D.

Dr. Garwood, an examining psychologist, found that Stewart did not have the stamina for for a four hour work day, the physical mobility or dexterity, the lifting capacity of more than 25 pounds, or the ability to sustain attention, concentration, and persistence. Tr. 1026. Dr. Garwood stated that Stewart had a serious employment handicap, and that vocational rehabilitation was not feasible. Tr. 1027.

The ALJ did not mention Dr. Garwood's opinion and offered no reason to reject the described limitations.

### B. George B. Waldmann, M.D.

Dr. Waldmann examined Stewart at the request of Vocational Rehabilitation. He noted chronic migraines, unusual affect, and tenderness in multiple joints. Tr. 571. Stewart had general weakness, a decreased range of motion in the legt shoulder, a weak grip, cold feet, and was profoundly deconditioned. Tr. 572. Dr. Waldmann stated that Stewart was "certainly totally disabled at this point, " and that vocational rehabilitation "would be a waste of time and money" until Stewart had received proper treatment. Tr. 568.

The ALJ noted Dr. Waldmann's report, but did not identify a reason to reject the described limitations and did not address the disability opinion. Tr. 1826.

### C. Ron Blehm, Physical Therapist

A January 2000 physical therapy evaluation found that Stewart "could work up to 4 hours per day in a SEDENTARY CATEGORY, but this may not be functional or practical." Tr. 1190, (emphasis in original.)

The ALJ did not address this evaluation.

The Commissioner argues that these errors were harmless, and points to other, possibly contradictory evidence. However, the Commissioner is not allowed to advance a *post hoc* rationale as a basis for upholding the ALJ's finding. *Pinto v. Massanari,* 249 F.3d 840 (9th Cir. 2001).

## IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a

9 - OPINION AND ORDER

determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's failure to credit the VA disability rating and the opinions of the two physicians and the opinion of the physical therapist is erroneous for the reasons set out above. If the opinions are credited, Stewart would be unable to maintain full-time employment.

## CONCLUSION

For these reasons, the ALJ's decision that Stewart is not disabled is not supported by substantial evidence. The decision of the Commissioner is reversed and this case is remanded for the calculation and payment of benefits.

IT IS SO ORDERED.

Dated this ___ day of September, 2012.

JAMES A. REDDEN
United States District Judge

10 - OPINION AND ORDER